Opinión de conformidad emitida por el
Juez Asociado Señor Rivera García,
a la que se unen el Juez Asociado Señor Martínez Torres, el Juez Asociado Señor Kolthoff Caraballo y el Juez Asociado Señor Feliberti Cintrón.
Estoy conforme con la sentencia que el Tribunal emite hoy por la cual se revoca en parte y se modifica el dictamen del foro apelativo intermedio. En esencia, resolvemos que todos los demandados son responsables solidariamente por los actos constitutivos de hostigamiento sexual en el en-torno laboral a los que fue sometida la Sra. Haydee Ortiz González.
Ahora bien, diferimos del criterio que postula que la Ley de Hostigamiento Sexual en el Empleo, infra, establece una responsabilidad vicaria de la cual no puede desvincu-larse el patrono. El análisis expuesto en la Opinión de con-formidad de la distinguida Juez Asociada Señora Rodrí-guez Rodríguez es contrario a la clara intención legislativa del referido estatuto.
Por entender que la responsabilidad aplicable a un pa-trono por los actos de hostigamiento sexual incurridos por sus supervisores o agentes no debe ser impuesta de ma-nera automática, me veo precisado a emitir estos pronunciamientos. Consecuentemente, en armonía con la política pública de trabajo equitativa y justiciera que la Asamblea Legislativa adoptó en el ambiente laboral, *48 afirmo los criterios que fundamentan mi razonamiento. Adelanto que estamos contestes con la conclusión de que la señora Ortiz González fue víctima de hostigamiento sexual en su lugar de empleo.
En ánimo de no ser repetitivos, adoptamos los antece-dentes fácticos reseñados adecuadamente en la Sentencia del Tribunal. En vista de ello, presentamos un marco jurí-dico y el análisis de su aplicación a la controversia que tenemos ante nuestra consideración. Pasemos a esbozar una síntesis del alcance del dictamen del foro de primera instancia y de la sentencia recurrida.
I
La Sra. Haydeé Ortiz González (señora Ortiz González o demandante) presentó una demanda el 5 de abril contra Caribbean Restaurants LLC, la Sra. Daisy Vázquez y el Sr. José Rivera (codemandado). La demandante alegó que fue víctima de hostigamiento sexual, persecución y represalias. Además, solicitó una indemnización en daños y perjuicios al amparo de la Ley Núm. 17 de 22 de abril de 1988 (29 LPRA sec. 155 et seq.), conocida como la Ley sobre Hostigamiento Sexual en el Empleo (Ley Núm. 17); la Ley Núm. 69 de 6 de julio de 1985 (29 LPRA sec. 1321 et seq.; la Ley Núm. 100 de 30 de junio de 1959 (29 LPRA sec. 148 et seq.); los Arts. 1802 y 1803 del Código Civil, 31 LPRA secs. 5141-5142, y la Constitución de Puerto Rico.
Luego de aquilatar la prueba presentada en el juicio plenario, el Tribunal de Primera Instancia desestimó las causas de acción al amparo de la Ley Núm. 80, la Ley Núm. 69 y la Ley Núm. 100. En su dictamen coligió que no se evidenció que la demandante sufrió un despido constructivo. Así como tampoco su renuncia se debió al hostigamiento sexual al que la expuso el señor Rivera, ni hubo discrimen por parte de Caribbean Restaurants por *49 razón del sexo de la demandante. No obstante, el foro pri-mario concluyó que el codemandado Rivera incurrió en ac-tos de hostigamiento sexual hacia la señora Ortiz González. Asimismo, determinó que la alta jerarquía de la compañía trató el hostigamiento sexual del señor Rivera hacia la demandante de forma adecuada, ya que tan pronto supo de tal conducta lo documentó, suspendió al agresor y celebró una investigación en tiempo mínimo. En consecuencia, expresó que Caribbean Restaurants actuó afirmativamente como un patrono debe conducirse para prevenir y remediar un caso de hostigamiento sexual. Em-pero, al interpretar el Art. 5 de la Ley Núm. 17 (29 LPRA sec. 155d), coligió que la compañía debía responder por las actuaciones del codemandado por el mero hecho de ser este un supervisor. Véase Caso Núm. CC-2009-0243, Ira Parte, Certiorari, Apéndice, pág. 256. Igualmente, el foro prima-rio concluyó que la demandante también fue humillada por la falta de supervisión de parte de la gerente Vázquez al no prohibir ni sancionar el ambiente suscitado en el restau-rante luego de la renuncia del codemandado.
Por consiguiente, al haberse probado las causas de ac-ción de hostigamiento sexual y de daños y perjuicios por un ambiente inadecuado de trabajo, resolvió que los demanda-dos debían indemnizar solidariamente a la señora Ortiz González. Concretamente, el dictamen del tribunal de ins-tancia condenó a los demandados a satisfacer a la deman-dante $10,000 en daños y perjuicios y angustias mentales causados por los actos de hostigamiento sexual del señor Rivera y $1,000 por daños y perjuicios ocasionados por la señora Vázquez al permitir un ambiente de humillación luego de que la demandante delatara el patrón de hostiga-miento sexual del codemandado. Así también, $2,750 por honorarios de abogado.
El 7 de febrero de 2008, la demandante presentó una moción de determinaciones adicionales de hechos y derecho. Por su parte, el 13 de febrero del mismo año Ca *50 ribbean Restaurants solicitó reconsideración de la senten-cia emitida, pero el foro primario denegó ambas mociones.
No contestes, ambas partes acudieron al Tribunal de Apelaciones. Por un lado, la demandante alegó que la in-demnización concedida no era proporcional a los daños causados y que la Ley Núm. 17 requería que dicha cuantía fuera duplicada. Por el otro, Caribbean Restaurants, ar-güyó que no estaba obligado a responder por los actos de sus empleados pues tomó las medidas correctivas necesa-rias antes y después de los hechos de la controversia. Por su parte, el señor Rivera se opuso al recurso presentado por la demandante y sostuvo que los elementos de hostiga-miento sexual no fueron probados, así como tampoco se demostró que la conducta imputada causara cambios en los términos y condiciones del empleo de la demandante.
El 30 de junio de 2008 el foro apelativo intermedio dictó una resolución en la que dispuso que Caribbean Restaurants no respondía por los actos del codemandado. Esto tras concluir que la empresa cumplió con sus responsabili-dades legales al promover una política de prevención y co-rrección de actos de hostigamiento sexual en el empleo. Entendió el tribunal a quo que al determinar si un patrono es responsable por los actos de sus supervisores, es nece-sario considerar la totalidad de las circunstancias en que ocurrieron los hechos, según lo dispone el Art. 4 de la Ley Núm. 17 (29 LPRAsec. 155c). Conforme a ello, dispuso que los patronos no son automáticamente responsables de los actos de hostigamiento sexual cometidos por sus supervi-sores, pues hay que sopesar las circunstancias de cada caso. Por consiguiente, al evaluar la situación de autos de-terminó que el señor Rivera debía responder por sus actos y no la compañía.
Por otra parte, el foro intermedio concluyó que la com-pañía era responsable por las acciones de la señora Váz-quez según el Art. 1803 del Código Civil, 31 LPRA see. 5142. Asimismo, determinó que la compensación de *51 $10,000 era adecuada y que conforme al Art. 11 de la Ley Núm. 17 (29 LPRA sec. 155j), procedía su duplicación.
Insatisfecho, el 30 de marzo de 2009 el señor Rivera compareció ante nos mediante una petición de certiorari para solicitar la revocación de la sentencia emitida por el foro apelativo. En particular, señaló que el tribunal erró al determinar que incurrió en actos de hostigamiento sexual en su modalidad de ambiente hostil. Así también, argüyó que dicho foro erró al confirmar los daños adjudicados. Re-clamó que, en la alternativa, Caribbean Restaurants res-pondía solidariamente en virtud de la Ley Núm. 17.
Asimismo, el 24 de marzo de 2009 la señora Ortiz Gon-zález acudió ante nosotros mediante un recurso de certio-rari y reclamó que las sumas otorgadas no correspondían a una valoración objetiva de los perjuicios sufridos. Sostuvo además, que el tribunal apelativo incidió al revocar la im-posición de responsabilidad solidaria de Caribbean Restaurants al dejar sin efecto la fijación de honorarios de abo-gado a esa compañía.
Subsiguientemente, el 18 de septiembre de 2009 dene-gamos el recurso presentado por el señor Rivera, pero en reconsideración lo expedimos el 30 de octubre de ese año. Por su parte, el recurso de la demandante se expidió el 8 de octubre de 2009. En consecuencia, el 18 de agosto de 2010 ordenamos la consolidación de ambas peticiones. Así pues, con el beneficio de la comparecencia de las partes pasamos a exponer el derecho aplicable a la controversia de autos.
II
Mediante la opinión de conformidad avalada por otros miembros de esta Curia se interpreta que la responsabili-dad del patrono por los actos de hostigamiento sexual co-metidos por sus agentes o supervisores es de carácter vica-rio y debe ser impuesta de manera automática indepen- *52 dientemente de cualquier otro factor.(1) Esto, a pesar de que el patrono haya tomado las medidas preventivas y educativas que dicta la ley y así también, haya sido dili-gente al manejar una queja de esta naturaleza. Diferimos *53 de esta interpretación extremadamente inflexible por en-tender que es contraria a la intención legislativa, los prin-cipios promulgados en la Ley Núm. 17 y la doctrina federal desarrollada a partir de la interpretación de las guías de la EEOC. Contrario a lo esgrimido en la opinión de conformi-dad, es necesario considerar la doctrina y jurisprudencia federal al evaluar la imposición de responsabilidad patro-nal en estos casos.
Recordemos que cuando un estatuto de otra jurisdicción ha servido de modelo en la confección de una ley local, se presume que se adopta con la interpretación que se le ha dado en la jurisdicción de donde procede. Beníquez et al. v. Vargas et al., 184 DPR 210 (2012). En ese aspecto, la opinión de conformidad de la colega señala correctamente que el Art. 5 de la Ley Núm. 17, supra, “es una traducción literal del inciso (c) de las guías de la EEOC”. Opinión de conformidad de la Juez Asociada Señora Rodríguez Rodríguez, págs. 31-32. Por esa razón, es fundamental examinar cómo los tribunales federales han lidiado con contro-versias similares. Al hacer ese análisis, tendremos presente que “[c]uando una de nuestras instituciones derive de determinada tradición jurídica, los precedentes de ésta tendrán valor persuasivo en esta jurisdicción, sin olvido de desarrollos valiosos en otros sistemas, aunque sujeto siempre a las realidades específicas de nuestro medio”. Pueblo v. Rivera Cintrón, 185 DPR 484, 490 (2012), citando a Peña Clos v. Cartagena Ortiz, 114 DPR 576, 588 (1983). Véase, además, R.E. Bernier y J.A. Cuevas Segarra, Aprobación e interpretación de las leyes en Puerto Rico, 2da rev., San Juan, Pubs. JTS, 1987, pág. 451. Veamos.
A. Concepción del hostigamiento sexual en el empleo como una modalidad de discrimen por razón de sexo en la esfera federal
En 1964 el Congreso de Estados Unidos aprobó la Ley Federal de Derechos Civiles, 42 USCA sec. 2000e-17, *54 con el fin de evitar las prácticas discriminatorias en el empleo. Con esta legislación se prohibió de manera ex-presa toda conducta tendente a crear diferencias entre dis-tintos grupos, según clasificados en la propia legislación, en el lugar de trabajo. Tras la aprobación de este estatuto, en la see. 703 del Título VII, quedó vedado el uso de prác-ticas discriminatorias en el empleo por razón de raza, color, origen nacional, religión y sexo. Id. Es meritorio apuntar que aunque el lenguaje del estatuto proscribe el discrimen por razón de sexo, este no menciona de manera expresa la conducta de hostigamiento sexual. Sin embargo, en 1972 el Congreso enmendó el Título VII a través de la Ley de Igualdad de Oportunidades en el Empleo, 42 USCA see. 2000e et seq., y creó la Comisión de Igualdad de Oportuni-dades en el Empleo (EEOC, por sus siglas en inglés). Ello para que mediante esta entidad se ejecutara y se velara por el cumplimiento de las disposiciones contenidas en ese cuerpo legal y proveer a toda víctima un proceso de trámite de querellas por razón de discrimen en el empleo.
En aras de promover interpretaciones judiciales confor-mes al espíritu de la citada disposición, la EEOC emitió en noviembre de 1980 las normas guía intituladas E.E.O.C. Guidelines on Discrimination Because of Sex. 29 CFR sec. 1604. De esa forma, identificó el hostigamiento sexual como una clase de discrimen por razón de sexo. íd. Ade-más, estableció que es necesario analizar la totalidad de las circunstancias al momento de determinar si una con-ducta en particular es hostigamiento sexual. En específico, las guías promulgadas por la agencia federal establecieron que el hostigamiento sexual puede ser de naturaleza quid pro quo (avances sexuales no deseados, solicitud de favores sexuales, y situaciones similares, conectados a una ventaja económica o a algún menoscabo laboral si la solicitud es rechazada). Asimismo, se determinó que los avances, las solicitudes de favores y otros tipos de conducta física de índole sexual pueden constituir hostigamiento sexual si *55 esa conducta tiene el propósito o el efecto de irrazonable-mente interferir con el desempeño de una persona en el trabajo o de crear un ambiente intimidante, hostil u ofen-sivo, aunque estén ausentes las condiciones quid pro quo. 20 CFR sec. 1604.11(a)(3). Esta última forma de hostiga-miento sexual es lo que se conoce como hostigamiento por ambiente hostil.
En ese contexto, las guías prescribían lo siguiente sobre el hostigamiento sexual en el empleo:
(a) El hostigamiento sobre la base de sexo es una violación a la See. 703 del Título VII. Avances sexuales que no son bien recibidos, solicitudes de favores sexuales y cualquier otra con-ducta física o verbal de naturaleza sexual, constituye hostiga-miento sexual cuando (1) el aceptar tal conducta es explícita o implícitamente un término o condición para el empleo de un individuo, (2) el aceptar o rechazar dicha conducta por parte de un individuo se utiliza como base para tomar decisiones sobre empleo que afectan a tal individuo o (3) dicha conducta tiene el propósito o efecto de interferir irrazonablemente con la realización del trabajo de un individuo o crear un ambiente de trabajo intimidante, hostil u ofensivo.
(b) Al determinar si una alegada conducta constituye hostiga-miento sexual, la Comisión considerará el récord completo y la totalidad de las circunstancias, tales como la naturaleza de las proposiciones sexuales y el contexto en que ocurrieron los ale-gados incidentes. La determinación de la legalidad de una ac-ción particular se hará a base de los hechos y caso por caso.
(c) Al aplicar los principios generales del Título VII, un pa-trono, agencia de colocaciones, comité de aprendices u organi-zación laboral (en lo sucesivo mencionadas colectivamente como ‘patrono’) es responsable por sus actos y por aquellos de sus agentes y supervisores con respecto al hostigamiento sexual independientemente de si los actos específicos de los cuales se protesta estuviesen autorizados o hasta prohibidos por el patrono e independientemente de si el patrono conocía o debió conocer de su existencia. La Comisión examinará las circunstancias de la relación laboral específica y de los traba-jos realizados por el individuo para determinar si un individuo actúa en capacidad de supervisor o de agente.
(d) Con respecto a la conducta entre colegas, un patrono es responsable por actos de hostigamiento sexual en el centro de trabajo donde el patrono (o sus agentes o supervisores) conoce *56 o debió conocer la conducta, a menos que pueda mostrar que tomó la acción correctiva apropiada inmediatamente.
(e) Un patrono puede también ser responsable de los actos de personas que no son sus empleados, con respecto al hostiga-miento sexual de empleados en el centro de trabajo, cuando el patrono (o sus agentes o supervisores) conoce o debió conocer la conducta y no toma la acción correctiva apropiada inmediatamente. Al revisar estos casos, la Comisión conside-rará la extensión del control del patrono y cualquier otra res-ponsabilidad legal que pudiese tener el patrono con respecto a la conducta de dichas personas que no son sus empleados.
(f) La prevención es la mejor herramienta para eliminar el hostigamiento sexual. Un patrono debe tomar todos los pasos necesarios para evitar el hostigamiento sexual, tales como traer el tema afirmativamente, expresar una fuerte desapro-bación, elaborar las sanciones apropiadas, informar a los em-pleados de su derecho a traer el asunto y cómo traer el asunto de hostigamiento bajo el Título VII y desarrollar métodos para crear conciencia en todas las personas implicadas.
(g) Otras prácticas relacionadas: cuando se conceden oportu-nidades o beneficios porque un individuo ha aceptado las pro-posiciones sexuales del patrono o sus solicitudes sexuales, puede que el patrono sea responsable de discrimen ilegal por razón de sexo contra otras personas que están cualificad [a] s pero a quienes se les negó la oportunidad o el beneficio de empleo. (Traducción nuestra). 29 CFR sec. 1604.11 (1983).
Luego de varios dictámenes emitidos por los tribunales apelativos, el Tribunal Supremo de Estados Unidos ratificó la conclusión de la EEOC de que la prohibición de discrimen por razón de sexo debe abarcar el hostigamiento sexual como una manifestación de esa conducta. Meritor Sav. Bank, FSB v. Vinson, 477 US 57 (1986). Así pues, el Tribunal Supremo federal expresó de forma explícita y en conformidad con las Guías de la EEOC que el hostigamiento sexual es un tipo de discrimen sexual. Al así razonar, confirmó la norma de que las disposiciones contenidas en el Título VII reconocen a los empleados el derecho a trabajar en un ambiente libre de discrimen, intimidación, ridiculizaciones e insultos. Meritor Sav. Bank, FSB v. Vinson, supra, pág. 65. Asimismo, ese foro concluyó que el concepto de hostigamiento sexual, además del quid pro quo, *57 incluye el hostigamiento por ambiente hostil. Ahora bien, determinó que para que sea enjuiciable según las provisiones de ese estatuto, debe ser lo suficientemente severa o generalizada como para alterar las condiciones de empleo de la víctima y crear un ambiente de trabajo abusivo. íd., pág. 67, citando a Henson v. City of Dundee, 682 F.2d 897, 904 (11mo Cir. 1982). En ese contexto, el Tribunal rechazó la regla de responsabilidad automática a los patronos por los actos de sus supervisores o agentes promovida por las Guías de la EEOC. Empero, no proveyó una norma para resolver cuándo procedía asignar responsabilidad patronal en estos casos.
Específicamente, los hechos de Meritor Sav. Bank, FSB v. Vinson, supra, trataban de una demanda instada por la señora Mechelle Vinson contra su patrono, Meritor Savings Bank (Banco). Vinson alegó que sufrió un hostigamiento sexual constante de parte de Sidney Taylor, vice-presidente del Banco y su supervisor.(2) Tras once días de juicio, el tribunal de distrito concluyó que Vinson no fue víctima de hostigamiento sexual, como tampoco de discrimen. También, determinó que el Banco no debía responder por los reclamos de la demandante porque no hubo una notificación previa y porque ningún empleado, inclu-yendo la demandante, notificó ni instó una queja contra Taylor por hostigamiento sexual. El Tribunal de Circuito de Apelaciones revocó y resolvió que el tribunal inferior falló al no considerar si la demandante había hecho un reclamo por hostigamiento sexual basado en su modalidad de ambiente hostil. Además, sostuvo que la notificación al *58 patrono sobre el hostigamiento era irrelevante para los propósitos de asignar responsabilidad. Ello, por entender que los patronos son responsables de manera estricta por ese tipo de hostigamiento.
Finalmente, el Tribunal Supremo de Estados Unidos re-chazó las determinaciones de responsabilidad formuladas por ambos tribunales. Al así proceder, coligió que al definir que el término “patrono” incluye “agente” en el Título VII, el Congreso quiso establecer ciertos límites sobre los actos de empleados por los cuales los patronos deben responder. Meritor Sav. Bank, FSB v. Vinson, supra, págs. 62 y 72. Sin entrar a establecer una regla definitiva, el Tribunal razonó que aunque los principios de agencia del derecho común no son transferibles con todas sus particularidades al Título VII, estos deben servir de guía a los tribunales al momento de evaluar los reclamos de responsabilidad patronal por hostigamiento sexual de los supervisores.(3) En vista de ello, el Más Alto Foro federal sostuvo que el tribunal ape-lativo erró al establecer una regla de responsabilidad vica-ria automática en dichos casos. No obstante, aclaró que la ausencia de notificación o conocimiento de los hechos no libera automáticamente de responsabilidad al patrono. Además, puntualizó que tampoco lo libera de responsabili-dad el hecho aislado de que tenga una política antidiscri- *59 minatoria y un procedimiento de querellas.(4) Concreta-mente el Tribunal Supremo federal pautó:
We therefore decline the parties’ invitation to issue a definitive rule on employer liability, but we do agree with the EEOC that Congress wanted courts to look to agency principles for guidance in this area. While such common-law principles may not be transferable in all their particulars to Title VII, Congress’ decision to define “employer” to include any “agent” of an employer, 42 USC. 2000e(b), surely evinces an intent to place some limits on the acts of employees for which employers under Title VII are to be held responsible. For this reason, we hold that the Court of Appeals erred in concluding that employers are always automatically liable for sexual harassment by their supervisors. See generally Restatement (Second) of Agency 219-237 (1958). For the same reason, absence of notice to an employer does not necessarily insulate that employer from liability. Ibid. Meritor Sav. Bank v. Vinson, supra, pág. 72.
Por otra parte, el Tribunal enfatizó que no todo tipo de conducta o lenguaje es suficiente para constituir hostiga-miento sexual mediante la creación de un ambiente hostil. Para que así sea, el hostigamiento tiene que ser lo suficien-temente severo como para alterar las condiciones de empleo y crear un ambiente de trabajo desfavorable para la víctima. Resolvió además, que a base de las Guías emitidas por la EEOC, el juzgador de hechos deberá examinar la totalidad de las circunstancias que rodean el caso, evaluar la naturaleza de las proposiciones y el contexto en que ocu-rrieron los incidentes. 29 CFR sec. 1604.11(b) (1983). Al aplicar este enfoque, concluyó que el hecho de que la que- *60 reliante hubiese actuado voluntariamente al sostener rela-ciones sexuales con el hostigador no constituía una defensa. Así pues, estableció que lo determinante no es si la participación de la víctima en la relación sexual fue vo-luntaria, sino que las proposiciones o los avances sexuales no hayan sido bienvenidos. 29 CFR sec. 1604.11(a) (1983). Véase, además, Rodríguez Meléndez v. Sup. Amigo, Inc., 126 DPR 117 (1990). Por ende, lo crucial, según apuntó el Tribunal, es verificar si las manifestaciones en controver-sia no fueron bien recibidas, y no si la participación real de la persona presuntamente hostigada en la relación sexual fue voluntaria. Meritor Sav. Bank, PSB v. Vinson, supra, pág. 68; Rodríguez Meléndez v. Sup. Amigo, Inc., supra.
A partir de la norma establecida en Meritor, los tribu-nales reconocieron que un patrono es susceptible de responder vicariamente al amparo del Título VII de la Ley Federal de Derechos Civiles, por el hostigamiento sexual en su modalidad de ambiente hostil creado por un superior a un empleado de menor jerarquía. Sin embargo, en ausen-cia de una norma específica sobre los límites de la respon-sabilidad de los patronos, los dictámenes por parte de los tribunales inferiores sobre ese aspecto eran variados.
Posteriormente, en 1998 el Tribunal Supremo federal resolvió cuáles serían los criterios aplicables para resolver el particular de la responsabilidad vicaria patronal. Ello lo hizo a través de dos casos resueltos ese mismo año: Faragher v. City of Boca Raton, 524 US 775 (1998), y Burlington Industries, Inc. v. Ellerth, 524 US 742 (1998). Aunque ambos casos presentaban distintos hechos, el Tribunal aplicó un raciocinio unificado en cuanto a la responsabilidad vicaria del patrono por el hostigamiento sexual cometido por sus supervisores o agentes. De esa forma, sostuvo que un patrono es responsable de manera automática por las acciones de hostigamiento sexual que culminan en una acción laboral tangible contra la víctima.
*61 Por otro lado, el Tribunal Supremo federal consideró que constituiría una extralimitación responsabilizar a los patronos en todos los casos en que la acción de hostiga-miento del supervisor no culmina en una acción laboral tangible.(5) Por ello, resolvió que cuando el supervisor o agente hostigador no toma acciones laborales tangibles contra la víctima, el patrono puede presentar una defensa afirmativa sostenida en: (1) los esfuerzos que este haya realizado para prevenir y corregir el hostigamiento, y (2) el que la víctima de manera irrazonable haya fallado en apro-vechar las oportunidades provistas por el patrono para evi-tar o mitigar daños. Faragher v. City of Boca Raton, supra, pág. 807; Burlington Industries, Inc. v. Ellerth, supra, pág. 765.
En el caso de Burlington Industries, Inc. v. Ellerth, supra, Kimberly Ellerth, una vendedora de Burlington alegó que Ted Slowik, un gerente que la supervisaba de manera indirecta, le profirió comentarios sexuales no deseados y le indicó que su éxito en la compañía estaba supeditado a que esta se sometiera a sus avances. Aunque Ellerth rechazó las invitaciones de Slowik, este nunca ejecutó sus amena-zas y no tomó ningún tipo de acción laboral contra ella. Ante este marco fáctico, la el Tribunal Supremo federal decidió que esta no era una situación de hostigamiento la-boral quid pro quo. Conforme a ello, expresó que las sim-ples amenazas de acciones adversas o las promesas de be-neficios laborales que no se cumplen, no son suficientes para convertir una reclamación de hostigamiento sexual por ambiente hostil en una de quid pro quo. Id., pág. 754. Así pues, la distinción sustantiva principal entre el hosti-gamiento sexual que resulta en una acción laboral tangible (quid pro quo) y el que no desemboca en ningún tipo de acción laboral (ambiente hostil) es que este último requiere que se pruebe que el hostigamiento fue severo o ya estaba *62 generalizado. Mientras, en el primer supuesto, solamente tiene que probarse que hubo una acción laboral contra la víctima por razón de que esta se negó a aceptar los avances sexuales del supervisor o agente. En este último supuesto, presentar prueba de que hubo una acción laboral tangible será suficiente para probar el hostigamiento sexual quid pro quo, y, en consecuencia, el patrono será automática-mente responsable por los actos del supervisor. No es ne-cesario demostrar que el hostigamiento sexual fue severo o que ya estaba generalizado. Así pues, la responsabilidad vicaria automática del patrono procede cuando el supervisor que hostiga toma “acciones laborales tangibles” contra su víctima. Resulta conveniente resaltar que el Tribunal definió el término de “acción laboral tangible” como “un cambio significativo en el estatus de empleo, como emplear, despedir, no ascender, reasignar puestos con responsabili-dades significativamente diferentes, o la decisión de cau-sar un cambio significativo en beneficios”. (Traducción nuestra). Burlington Industries, Inc. v. Ellerth, supra, pág. 761.
Igualmente, opinó que cuando el hostigamiento sexual no culmina en una acción laboral tangible, existe una causa de acción al amparo de la teoría de ambiente hostil en el trabajo. Esto así, pues el hostigamiento sexual por ambiente hostil se basa en la noción de que la conducta sexual no deseada ni bienvenida, si es lo suficientemente severa o generalizada, viola el Título VII porque altera los términos y condiciones de empleo por razón de sexo. Burlington Industries, Inc. v. Ellerth, supra, pág. 754.
Por otra parte, en Faragher v. City of Boca Raton, supra, el máximo foro federal evaluó los reclamos de Beth Ann Faragher que indicaban que fue sometida a un am-biente hostil de naturaleza sexual por sus supervisores in-mediatos mientras trabajaba como salvavidas para la ciu-dad de Boca Raton. Allí, el Tribunal destacó que los estándares de hostigamiento deben ser lo suficientemente *63 exigentes como para asegurar que las disposiciones del Título VII no se conviertan en un “código general de civilidad”. Id., pág. 788. En relación con ese extremo, precisó dicho foro que el estándar de que la conducta imputada sea “severa o generalizada”, para determinar si existe hostigamiento sexual por ambiente hostil, es de fácil articulación pero difícil de aplicar. Id., pág. 786, citando a Meritor, supra, pág. 67. En su análisis, instó a los tribunales a evaluar la totalidad de las circunstancias prestando particular atención a la frecuencia de la conducta discriminatoria; su severidad; si era amenazante de manera física o humillante; o una mera expresión ofensiva o si interfirió irrazonablemente con el funcionamiento laboral del empleado. Faragher v. City of Boca Raton, supra, pág. 787. A fin de cuentas, el Tribunal resolvió que un patrono podrá ser sujeto a responsabilidad vicaria por las acciones de un supervisor que victimice a un empleado mediante un am-biente hostil. Esto es, en aquellas instancias en que el supervisor no tome ninguna medida sobre los términos de empleo de la víctima. Sin embargo, según ese supuesto, el patrono puede alegar una defensa afirmativa ante el reclamo de responsabilidad y daños, la cual deberá probar mediante preponderancia de prueba. Esta defensa se compone de dos elementos: (a) que el patrono ejerció un cuidado razonable para prevenir y corregir prontamente cualquier conducta de hostigamiento, y (b) que el empleado demandante irrazonablemente falló en aprovechar las oportunidades de medidas preventivas o correctivas provistas por el patrono para evitar los daños. Faragher v. City of Boca Raton, supra, pág. 807; Burlington Industries, Inc. v. Ellerth, supra, pág. 765. Es necesario apuntar además, que esta defensa, una vez establecida, no necesariamente libera al patrono de compensar daños en su totalidad. Según la doctrina adoptada tanto en Faragher como en Ellerth, el grado de limitación de responsabilidad patronal estará sujeto a la determinación del principio de mitigación de *64 daños. Burlington Industries, Inc. v. Ellerth, supra, págs. 764-765; Faragher v. City of Boca Raton, supra, págs. 806-807.(6) Es decir, de establecer que si la parte demandante hubiera ejercido un cuidado razonable y, en consecuencia, se habría evitado todo el daño sufrido, el patrono evade toda responsabilidad; en cambio, si se demuestra que la víctima, al ejercer el debido cuidado, solamente hubiera evitado una parte del daño, el patrono es responsable, pero no pagará por los daños que pudieron evitarse. Id.
Precisa mencionar que luego de estos dictámenes, la EEOC procedió a derogar el inciso “c” de las Guías sobre discrimen por razón de sexo en el empleo. Particularmente, ese inciso era el que establecía responsabilidad al patrono independientemente de si sabía o no de la conducta de hos-tigamiento sexual desplegada por sus supervisores o agentes. 29 CFR see. 1604. De esta forma, adoptó las inter-pretaciones provistas por el foro supremo federal en Ellerth, supra, y Faragher, supra, sobre cuándo procede la responsabilidad patronal automática y cuándo un patrono puede alegar la defensa afirmativa, y así liberarse de res-ponsabilidad frente a los actos de sus supervisores.(7)
Resulta pertinente resaltar que en una decisión reciente del Tribunal Supremo federal tanto el caso de Ellerth como el de Faragher fueron reafirmados en todo su alcance y extensión.(8) Asimismo, se discutieron los contornos de la *65 figura del supervisor en aras de aclarar que no toda persona catalogada como tal, necesariamente es un agente de la empresa para esos propósitos. Como bien mencionamos, hay dos escenarios en los cuales un patrono responderá por el hostigamiento del supervisor: (1) cuando existen accio-nes laborables tangibles sobre la víctima, lo que da paso a la responsabilidad estricta, y (2) cuando no están presentes este tipo de acciones, pero la defensa afirmativa no pro-cede, lo que da paso a la responsabiliad vicaria del patrono. Respecto a esta última situación, en Ellerth, supra, y Faragher, supra, el Tribunal expresó que el patrono es res-ponsable vicariamente cuando un supervisor crea un am-biente hostil al hacer amenazas explícitas de alterar las condiciones y términos de empleo del subordinado víctima, pero no cumple tal amenaza. Ellerth, pág. 754; Vance v. Ball State Univ., 133 S.Ct. 2434 (2013), resuelto el 24 de junio de 2013. Ahora bien, en Vance v. Ball State Univ., supra, el Máximo Foro federal expresa que precisamente este razonamiento ata la segunda situación de hostiga-miento a la autoridad del supervisor de infligir un daño económico sobre su víctima.(9) En ese proceder, señala que *66 la responsabilidad vicaria se justifica debido a que el supervisor tiene esa autoridad laboral y el hecho de que en virtud de la misma puede cumplir sus amenazas contra la víctima. íd., pág. 2443.(10)
B. La Ley sobre el Hostigamiento Sexual en el Empleo en Puerto Rico
La inviolabilidad de la dignidad del ser humano es el principio primordial sobre el cual se cimentan los derechos fundamentales de toda persona. Art. II, Sec. 1, Const. PR, LPRA, Tomo 1; U.P.R. Aguadilla v. Lorenzo Hernández, 184 DPR 1001 (2012). Así pues, en nuestra Constitución se establece como derecho fundamental la protección de toda persona contra ataques abusivos a su honra, reputación y *67 vida privada o familiar. Art. II, Sec. 8, Const. PR, LPRA, Tomo 1. Igualmente, se prohíbe el discrimen por razón de raza, color, sexo, nacimiento, origen, condición social e ideas políticas o religiosas. Art. II, Sec. 1, Const. PR, supra.
Con el fin de promover el valor y la eficacia del mandato constitucional sobre el respeto a la dignidad del ser hu-mano en el ámbito laboral, nuestra Asamblea Legislativa declaró hace más de dos décadas como política pública que el hostigamiento sexual es una forma de discrimen por razón de sexo que menoscaba el principio de la inviolabilidad de la dignidad del ser humano. Véase U.P.R. Aguadilla v. Lorenzo Hernández, supra. Mediante la aprobación en 1988 de la Ley sobre Hostigamiento Sexual en el Empleo, Ley Núm. 17, se elevó la conducta contenida en su título, al mismo plano de otras modalidades de discrimen existentes tanto a nivel local como federal. Con el referido estatuto, el legislador prohibió el hostigamiento sexual en el empleo, impuso responsabilidades y fijó penalidades por ocurr-encia.(11) A esos efectos, la Exposición de Motivos de esta normativa se señala que
[l]a práctica del hostigamiento sexual en el empleo, en cual-quiera de sus formas, infringe la inviolabilidad [de la dignidad del] ser humano y constituye un claro discrimen contra el hombre o mujer en el campo del trabajo. Obstaculiza la labor de la persona, privándola del goce y disfrute de una vida plena a la cual tiene derecho todo ser humano en igualdad de condi-ciones ante la ley, según lo expresa el mandato constitucional y es una de las formas en que se manifiesta el discrimen por razón de sexo [...]
La magnitud de este problema es algo que nos debe intere-sar y preocupar a todos, ya que el hostigamiento sexual en el empleo constituye una ofensa repudiable contra la dignidad de todo ser humano.(12)
Por su parte, el Art. 3 prescribe que el hostigamiento sexual en el empleo es
*68 [...] cualquier tipo de acercamiento sexual no deseado, re-querimientos de favores sexuales y cualquier otra conducta verbal o física de naturaleza sexual o que sea reproducida uti-lizando cualquier medio de comunicación incluyendo, pero sin limitarse, al uso de herramientas de multimedios a través de la red cibernética o por cualquier medio electrónico, cuando se da una o más de las siguientes circunstancias:
(a) Cuando el someterse a dicha conducta se convierte de forma implícita o explícita en un término o condición del em-pleo de una persona.
(b) Cuando el sometimiento o rechazo a dicha conducta por parte de la persona se convierte en fundamento para la toma de decisiones en el empleo o respecto del empleo que afectan a esa persona.
(c) Cuando esa conducta tiene el efecto o propósito de inter-ferir de manera irrazonable con el desempeño del trabajo de esa persona o cuando crea un ambiente de trabajo intimi-dante, hostil u ofensivo. 29 LPRA sec. 155b.
Al interpretar el citado precepto, hemos expresado que los incisos (a) y (b) se refieren al hostigamiento equivalente quid pro quo, el cual “se produce cuando el sometimiento o el rechazo de los avances o requerimientos sexuales se toma como fundamento para afectar beneficios tangibles en el empleo”. Rodríguez Meléndez v. Sup. Amigo, Inc., supra, pág. 132. Mientras, el inciso (c) del Art. 3 trata sobre el hostigamiento sexual que se perpetra al crear un am-biente hostil e intimidante para la víctima. Esta vertiente de hostigamiento hostil “se produce cuando la conducta sexual para con un individuo tiene el efecto de intervenir irrazonablemente con el desempeño de su trabajo o de crear en el mismo un ambiente intimidante, hostil u ofensivo”. íd. Véase, además, Albino v. Ángel Martínez, Inc., 171 DPR 457 (2007). Así pues, al adoptar el criterio expuesto por el Tribunal Supremo federal en Meritor Sav. Bank, FSB v. Vinson, supra, y en Rodríguez Meléndez v. Sup. Amigo, Inc., supra, opinamos que el hostigamiento debe ser lo suficientemente severo como para trastornar las condiciones de empleo y crear un ambiente de trabajo pernicioso para la víctima.
*69 La Ley Núm. 17 dispone, además, que para hacer una determinación de hostigamiento sexual en el empleo es ne-cesario considerar la totalidad de las circunstancias en que ocurrieron los hechos. Art. 4, supra. Por ello, “si la alegada conducta constituye hostigamiento sexual en el empleo se considerará la totalidad de las circunstancias en que ocu-rrieron los hechos. La determinación de la legalidad de una acción se hará basada en los hechos de cada caso en particular”. Id. Así pues, al evaluar la existencia de hosti-gamiento sexual en su modalidad de ambiente hostil es imperativo que el juzgador de los hechos considere el efecto que dicho entorno ha tenido sobre el reclamante. En vista de ello, hemos reconocido que en ese tipo de entorno hostil e intimidante “aunque no afecte seriamente el bienestar sicológico de la víctima, puede afectar el funcionamiento y la efectividad de la víctima en el empleo, desalentar al em-pleado a permanecer en el empleo y dificultarle el progreso de su carrera”. Delgado Zayas v. Hosp. Int. Med. Avanzada, 137 DPR 643, 654 (1994).
Cónsono con lo enunciado, hemos resuelto que siguiendo el estándar de la totalidad de las circunstancias es impe-rativo examinar la naturaleza de la conducta imputada, su frecuencia e intensidad, el contexto en el que ocurre, su duración y la conducta y circunstancias personales de la alegada víctima. Delgado Zayas v. Hosp. Int. Med. Avanzada, supra, citando a Harris v. Forklift Systems, Inc., 510 US 17 (1993). No es indispensable que dicha conducta sea de naturaleza explícitamente sexual y tampoco se requiere que se produzca como consecuencia un daño económico. íd. Según indicamos en Rodríguez Meléndez v. Sup. Amigo, Inc., supra, a la luz de lo resuelto en Meritor Sav. Bank, FSB v. Vinson, supra, “[a] fin de cuentas, la pregunta de umbral en toda reclamación de acuerdo con esta modalidad es si la alegada conducta constitutiva de hostigamiento fue lo suficientemente severa y ofensiva como para alterar las condiciones del empleo y crear un ambiente de trabajo *70 abusivo”. Rodríguez Meléndez v. Sup. Amigo, Inc, supra, pág. 132.
Siguiendo las pautas establecidas en las Guías de la EEOC, según vigentes en ese momento, en los casos en que se compruebe que una persona ha sido víctima de hostiga-miento sexual en el empleo, la Ley Núm. 17 distingue dos tipos de responsabilidad patronal, a saber: cuando los actos de hostigamiento son cometidos por el patrono, sus agentes o supervisores, y cuando estos ocurren entre empleados. Respecto al primer supuesto, el Art. 5 dispone que
[u]n patrono será responsable de incurrir en hostigamiento sexual en el empleo por sus actuaciones y las actuaciones de sus agentes o supervisores, independientemente de si los actos específicos objeto de controversia fueron autorizados o prohi-bidos por el patrono e independientemente de si el patrono sabía o debía estar enterado de dicha conducta.
Se examinará la relación de empleo en particular a los fines de determinar si la persona que cometió el hostigamiento sexual actuó en su capacidad de agente o supervisor del patrono.
No será necesario establecer que el agente o supervisor que cometió el hostigamiento sexual supervisaba directamente al reclamante. 29 LPRA sec. 155d.
Asimismo, el patrono será responsable por los actos de hostigamiento sexual entre empleados en el lugar de tra-bajo si este, sus agentes o sus supervisores “sabían o de-bían estar enterados de dicha conducta, a menos que el patrono pruebe que tomó una acción inmediata y apro-piada para corregir la situación”. 29 LPRA sec. 155e.
También se establece que “[c]uando el patrono conceda oportunidades o beneficios de empleo como resultado de la sumisión de una persona a los acercamientos o requeri-mientos sexuales del patrono o de sus agentes o sus super-visores, el primero será responsable de hostigamiento sexual en el empleo ante las personas a quienes les negó tal oportunidad o beneficio”. 29 LPRA sec. 155g.
De lo expuesto, podemos concluir que previo a determi-nar si el patrono responde por los actos de hostigamiento *71 sexual en el trabajo, es imprescindible atender cuál era la relación laboral existente entre la víctima y el alegado hostigador. Ello es así, pues la propia legislación distingue entre los actos de hostigamientos cometidos por el patrono, sus supervisores o agentes y aquellos realizados por los empleados. Sin embargo, como explicaremos más adelante, consideramos que la responsabilidad patronal no debe ser impuesta de manera automática en todos los casos de hos-tigamiento sexual cometidos por supervisores o agentes, y de que debemos adoptar la doctrina federal vigente sobre la procedencia de una defensa afirmativa en los casos de hostigamiento sexual por ambiente hostil.(13)
Cabe resaltar que, en relación con el estándar de res-ponsabilidad patronal por los actos de hostigamiento sexual cometidos por sus agentes o supervisores este Tribunal no se ha expresado de manera categórica o concluyente. Como bien reconoce la otra opinión de conformidad, en Rodríguez Meléndez v. Sup. Amigo, Inc., supra, el Tribunal entendió que en ese momento no era necesario incorporar la doctrina federal sobre el estándar de responsabilidad patronal en casos de hostigamiento sexual. Para ese entonces, el ahora Juez Presidente Señor Hernández Dentón emitió una opinión concurrente y expresó la nece-sidad de que el Tribunal definiera expresamente el ámbito de la responsabilidad patronal. En esta ocasión había la oportunidad para así hacerlo, sin embargo al Tribunal es-tar dividido no fue posible pautar la norma.
Por otro lado, no podemos avalar la conclusión que se *72 expone en la otra opinión de conformidad, pág. 37-38, de que en Rosario v. Dist. Kikuet, Inc., 151 DPR 634 (2000), dimos por sentado la responsabilidad patronal sin que procedieran defensas afirmativas, en casos de hostigamiento sexual por ambiente hostil cometido por supervisores o agentes. En los hechos de ese caso, una empleada alegó que el presidente y accionista mayoritario de Kikuet la hostigó sexualmente, la despidió de manera injustificada y discriminó contra ella por razón de su embarazo. Distinguimos allí, que la controversia a resolver no era la de si el término “patrono” incluye a sus agentes, oficiales, administradores y supervisores. Más bien, debíamos dirimir si el patrono respondía de manera exclusiva por los actos de hostigamiento cometido por estos y, en consecuencia, los agentes y super-visores quedaban liberados de responder civilmente. Resol-vimos pues, que las leyes laborales aplicables a la controver-sia asignaban responsabilidad patronal, pero no eximían a los agentes o supervisores de responder en su carácter personal por sus actos. íd., pág. 644. Expresamos, además, que, “ [a]l responsabilizar el legislador al dueño de la empresa por la conducta de hostigamiento sexual de [los] supervisores, oficiales, administradores y agentes lo hizo con el propósito de fomentar la participación activa y concreta de éste, a los fines de asegurar un ambiente de respeto y dignidad hacia el trabajador”. íd., pág. 645. En consecuencia, concluimos que el “legislador [no pudo tener] la intención de fomentar la conducta proscrita por el estatuto dándole inmunidad a los supervisores, oficiales, administradores y agentes de la em-presa para que puedan incurrir en tal conducta impunemente”. íd. Concebimos que estas expresiones no adelantan y tampoco sostienen la teoría de responsabilidad patronal automática en todos los casos de hostigamiento sexual por ambiente hostil cometidos por los supervisores y agentes. Más bien, estos pronunciamientos aclaran que, en caso de asignarse la responsabilidad, los supervisores tam-bién tendrán que responder por sus acciones. Véase Opinión *73 de conformidad de la Juez Asociada Señora Rodríguez Rodríguez, pág. 38.
Asimismo, son erradas las expresiones en la opinión de conformidad de la compañera sobre el caso de U.P.R. Aguadillo v. Lorenzo Hernández, supra, que inducen a concluir que la responsabilidad patronal según descrita en la Ley Núm. 17 no debe imponerse considerando la jurisprudencia federal aplicable. En el esc. 14 del referido caso se aclara que el nivel de responsabilidad de las instituciones de enseñanza al amparo de la Ley Núm. 3 de 4 de enero de 1988 (3 LPRA sec. 149 et seq.) se distingue de la normativa federal estatuida en el Título IX de la Ley Federal de Educación, 20 USCA 1681 et seq. La citada nota lee como sigue: “Estos grados de responsabilidad, así como otros aspectos de la ley, la distinguen de su homologa federal, pero son similares a los dispuestos en la Ley Núm. 17 de 22 de abril de 1988 (29 LPRA sec. 155b) [...]”. U.P.R. Aguadillo v. Lorenzo Hernández, supra, pág. 1001 esc. 14. Estas expresiones se refieren exclusivamente al alcance de la Ley Núm. 3. La alusión a la Ley Núm. 17 es precisamente para establecer las diferencias de legislación local en materia de hostigamiento sexual en las instituciones de enseñanza vis a vis el hostigamiento en el entorno obrero patronal. Empero, la opinión de conformidad intenta deslucir ese razonamiento y saca de contexto las expresiones del Tribunal en la referida opinión. Para ser más claros, citamos ad verbatim parte de la discusión sobre la diferenciación que allí hicimos para que la Ley Núm. 17 no se extrapolara automáticamente a los casos de hostigamiento sexual en las instituciones de enseñanza:
Todas las diferencias señaladas justifican el que la interpretación de la Ley Núm. 17, supra, y su jurisprudencia, no pue-dan ser aplicadas de forma automática e irreflexiva en casos de hostigamiento sexual en el contexto de instituciones de en-señanza sin considerar las diferencias entre el contexto de aplicación de cada ley y las personas involucradas. En conse-cuencia, resolvemos que la normativa aplicable al contexto *74 obrero-patronal es meramente persuasiva y no determinante para la interpretación de la Ley Núm. 3, supra. Por estas mismas razones, nuestras conclusiones en el presente caso se limitan al contexto académico. U.P.R. Aguadilla v. Lorenzo Hernández, supra, pág. 1021.
Por otra parte, en el Art. 10 de la Ley Núm. 17 (29 LPRA sec. 1551) se exige que el patrono exponga y comuni-que de manera clara su política contra el hostigamiento sexual entre sus supervisores y empleados para propiciar un ambiente laboral sano y seguro, y proteger la dignidad de sus empleados. Así, se requiere que el patrono tome acciones activas para mantener el área de trabajo con un ambiente libre de intimidaciones y hostigamiento. A esos efectos, el referido artículo menciona las medidas que debe tomar el patrono incluyendo, pero sin limitarse, las si-guientes:
(a) Expresar claramente a sus supervisores y empleados que el patrono tiene una política enérgica contra el hostiga-miento sexual en el empleo.
(b) Poner en práctica los métodos necesarios para crear con-ciencia y dar a conocer la prohibición del hostigamiento sexual en el empleo.
(c) Dar suficiente publicidad en el lugar de trabajo, para los aspirantes a empleo, de los derechos y protección que se les confieren y otorgan bajo las sees. 155 a 155m de este título, al amparo de las sees. 1321 a 1341 de este título, las sees. 146 a 151 de este título y de la Constitución del Estado Libre Aso-ciado de Puerto Rico.
(d) Establecer un procedimiento interno adecuado y efectivo para atender querellas de hostigamiento sexual. íd.
En Delgado Zayas v. Hosp. Int. Med. Avanzada, supra, al analizar los méritos de una causa de acción por despido injustificado incoada por un empleado que fue despedido por hostigar a su supervisora, nuestro Tribunal por voz del hoy Juez Presidente Señor Hernández Denton, se expresó sobre las responsabilidades del patrono en casos de hosti-gamiento sexual. En particular, la conducta del alegado hostigamiento consistió en unas invitaciones a salir por *75 parte del empleado a la supervisora y luego, en otro inci-dente, este le bloqueó a la dama la salida del baño. Al con-cluir que estos hechos constituyeron hostigamiento sexual por crear un ambiente hostil a la supervisora, la adminis-tración del hospital despidió al empleado. Señalamos pues, que la Ley Núm. 17, responsabiliza en distintas instancias al patrono por los actos de hostigamiento cometidos por sus supervisores y empleados. De esta forma, reconocimos que un elemento fundamental de la referida ley es “que le im-pone al patrono la responsabilidad afirmativa en la pre-vención, prohibición y erradicación del hostigamiento sexual en el empleo”. íd., pág. 652. Asimismo, expresamos que en estos casos un patrono no puede esperar a que se repita la conducta de hostigamiento para tomar una acción contra el hostigador, pues esa conducta es lesiva a la paz y al funcionamiento del área de trabajo. Id., pág. 657.
Reseñada la norma jurídica federal y estatal vigente en relación con el hostigamiento sexual en el empleo y a la responsabilidad patronal, pasemos a discutir las razones que nos mueven a opinar que la responsabilidad patronal no debe ser impuesta de manera automática en casos de esta naturaleza. Ello implica que se deberá evaluar caso a caso la totalidad de las circunstancias al momento de aqui-latar si procede la imposición de responsabilidad.
C. La Ley Núm. 17 y su relación con la normativa federal
Como mencionáramos, la Ley Núm. 17 se aprobó con el propósito de elevar el hostigamiento sexual al mismo nivel que otros tipos de discrimen. Específicamente, el Informe de la Cámara de Representantes sobre el Proyecto del Se-nado 1437 que culminó en la aprobación de la referida ley, demuestra la preocupación de la Asamblea Legislativa por evitar este comportamiento tan nocivo en el entorno laboral. Durante el estudio de la medida, luego de hacer un recuento sobre la normativa federal, incluyendo la inter-pretación de las Guías de la EEOC —en las cuales se basó *76 el Proyecto del Senado 1437— el legislador reconoció que Meritor Sav. Bank, FSB v. Vinson, supra, es un caso que estableció determinaciones valiosas para el análisis de las referidas Guías. Véase Informe Conjunto de la Cámara de Representantes sobre el Proyecto del Senado 1437, 23 de marzo de 1988, pág. 9. Específicamente, en relación con ese asunto el legislador expresó que
[l]a jurisprudencia establecida [en el] caso [de Meritor Sav. Bank, FSB v. Vinson, supra] ha aportado una nueva visión en la interpretación de las guías y la jurisprudencia en él estable-cida se ha incorporado a esta medida para que al mismo tiempo de ser efectiva se logre un justo balance de todos los intereses y los derechos de las personas concernidas. El resul-tado final es una legislación de la cual nos sentimos legítima-mente orgullosos ya que recoge nuestras preocupaciones bási-cas y se llega a un resultado justo, equitativo y ponderado como se merece nuestro pueblo. Id.
Más adelante en el Informe, al comentar el Art. 4 de la ahora Ley Núm. 17, se puntualiza que
[p]ara mantener un justo balance y equilibrio el Artículo 4 de la medida establece unos criterios que deben considerarse en todo caso en donde se reclame la responsabilidad del patrono por actos de hostigamiento sexual realizados por sus agentes, supervisores, compañeros de trabajo y terceras personas contra empleados. A estos efectos se expresa que cada caso se examinará considerando los hechos particulares del caso y las circunstancias en que ocurrieron esos hechos. De esta forma al hacerse determinaciones caso por caso se evita la injusticia de establecer una norma tan general que en su aplicación a determinados hechos resulte no equitativa o poco razonable. Esta norma expresada en el Artículo 4 aplica a todas las circunstancias y a todo acto cubierto por la medida como principio de equidad. (Énfasis suplido). Informe Conjunto de la Cámara, supra, pág. 11.
En la otra opinión se interpreta el Art. 5 como un pre-cepto que asigna responsabilidad “absoluta” a los patronos en todos los casos. Ahora bien, el Informe Conjunto expresa que:
[e]n el Artículo 5 de la medida se recoge la norma de respon- *77 sabilidad que se aplicará a los patronos por las actuaciones de sus agentes o supervisores. La fraseología que se seleccionó para la redacción de esta sección es una traducción literal de las guías de E.E.O.C. contenidas en 29 CFR 1604.11(c). El propósito de utilizar esta redacción es que al aplicarse la norma a Puerto Rico se le dé la misma interpretación y alcance que se le ha dado en la jurisprudencia federal y específica-mente la de la opinión mayoritaria en el caso decidido por el Tribunal Supremo de Estados Unidos en Meritor Savings Bank v. Vinson. Esa interpretación está armonizada con las disposiciones del Artículo 4 de esta medida según expresamos anteriormente. En dicho caso de Meritor Savings Bank el Tribunal Supremo de Estados Unidos se expresó a los efectos de que: “... we hold that the Court of Appeals erred in concluding that employers are always automatically liable for sexual harassment by their supervisors... As to employer liability, we conclude that the Court of Appeals was wrong to entirely disregard agency principles and impose absolute liability on employers for the acts of their supervisors, regardless of the circumstances of a particular case.” Estando conscientes de esta interpretación a la norma equivalente en la jurisdicción federal se adopta en Puerto Rico con el mismo alcance allí expre-sado porque ello armoniza con todo nuestro ordenamiento civil incluyendo la norma de responsabilidad expuesta en el Artí-culo 1803 de nuestro Código Civil. De hecho, la medida no contiene todos los parámetros necesarios para determinar la forma y manera en que se ha de determinar la responsabilidad del patrono en casos de hostigamiento sexual debido a que ya están ampliamente cubiertos en el Código Civil de Puerto Rico especialmente en las disposiciones relativas a la responsabili-dad de toda persona por los daños ocasionados por él y por aquellas personas por las que debe responder ... De esta forma nuestro ordenamiento civil da normas supletorias necesarias para interpretar el alcance de esta medida y para determinar responsabilidad del patrono en todo caso y las posibles defen-sas de éste. (Énfasis suplido). Informe Conjunto de la Cámara, supra, págs. 11-13.
Algunos miembros de esta Curia sugieren que ignore-mos el historial expuesto en el Informe de la Cámara ade-más, porque el Representante Luciano Hernández se abs-tuvo de votar en la medida debido a que estaba en desacuerdo en que los patronos respondieran vicaria-mente. No podemos coincidir en que este es un fundamento para descartar el resto del historial de la medida. Ello *78 pues, la responsabilidad vicaria está claramente estable-cida en esta. Nuestra tesis, en cambio, es que hay cabida en nuestro ordenamiento para presentar defensas una vez se imputa este tipo de responsabilidad vicaria al patrono en los casos de hostigamiento sexual. El hecho de que un legislador no estuviera de acuerdo con la imposición de res-ponsabilidad vicaria no opera a favor de que se excluyan las defensas que hoy proponemos. Vale la pena resaltar además, que el legislador en cuestión, al rehusarse a emi-tir su voto no se refirió al mal empleado término de “res-ponsabilidad absoluta”, este usó el término correcto de “responsabilidad vicaria”. Véase Diario de Sesiones de la Cámara de Representantes, Aprobación Proyecto del Se-nado 1437, 24 de marzo de 1988, pág. 61.
Luego de examinar el texto de la Ley Núm. 17 recono-cemos que, ciertamente, el Art. 5 consigna que el patrono será responsable por los actos de hostigamiento sexual co-metidos por sus- supervisores o agentes independiente-mente de que haya tenido conocimiento de los mismos. Sin embargo, este no excluye de manera categórica que el pa-trono tenga defensas afirmativas para enfrentar la respon-sabilidad que se le quiere imputar. Dicho de otro modo, el texto del Art. 5 de la Ley Núm. 17, supra, no contradice de forma alguna la conclusión a la que arribamos de que un patrono pueda presentar defensas afirmativas en casos como el que nos ocupa. No estamos apartándonos del texto de la ley. Adviértase que el hecho de que la Asamblea Le-gislativa prohíba una defensa no implica que prohíba otras. Por esa razón, es innecesario acudir al Art. 14 del Código Civil, 31 LPRA sec. 14, cuando es evidente que el texto del Art. 5 de la Ley Núm. 17, supra, no es del todo claro y no está libre de toda ambigüedad.
Ante este cuadro, es preciso recurrir a los principios de hermenéutica para descubrir y hacer cumplir la verdadera intención del Poder Legislativo en esta medida. Rosario v. Dist. Kikuet, Inc., supra. Es plausible apuntar que la opi- *79 nión de conformidad de la Juez Asociada Señora Rodríguez Rodríguez por medio de un escolio(14) no excluye esta posibilidad. En vista de ello, considero que son contradic-torias las expresiones que “inequívocamente” resuelven que el mandato recogido en el Art. 5 de la Ley Núm. 17 es claro y, por ello, el patrono responde vicariamente por to-dos los actos de hostigamiento sexual realizados por sus agentes o supervisores dirigidos hacia empleados de menor jerarquía en toda circunstancia. Mediante estas asevera-ciones, por una parte, se apoya la imposición de responsa-bilidad “absoluta” y, por otra, se dice que no hay óbice en nuestro ordenamiento jurídico para adoptar la teoría de la defensa afirmativa por parte del patrono, según esbozada por el Tribunal Supremo de California. Esto milita en clara contravención con la intención legislativa plasmada en el Informe de la Cámara de Representantes. Recordemos que en el Informe se expresó que para interpretar la Ley Núm. 17 debemos hacerlo conforme a la normativa federal expuesta en Meritor Sav. Bank, FSB v. Vinson, supra.
Se suscitan además, serias preocupaciones en torno a la aplicación de responsabilidad absoluta en estos casos. En primer lugar, la tesis expuesta en la otra opinión le deja como única salida al patrono para liberarse de responsabi-lidad el que no se pruebe que hubo hostigamiento sexual por parte de sus supervisores. Esa situación, provocaría que el patrono se vea precisado a defender a su agente o supervisor frente a un reclamo de esta índole. Ello, incluso en los casos en que el patrono tenga conocimiento de que dichos actos se configuraron. D. Quiles Pumarejo, La res-ponsabilidad legal del patrono por los actos de hostiga-miento sexual de sus supervisores: recomendaciones en el *80 desarrollo doctrinal, 42 Rev. Der. Pur. 117 (2003).(15) Otra consecuencia de esta interpretación será que el hostigador se resguardará detrás de la figura del patrono, buscando protección, incentivándose de esta forma la continuidad de la conducta legal. Id. Asimismo, se promueve que las par-tes reclamantes establezcan casos frívolos e inmeritorios en búsqueda de ganar cuantiosas sumas de dinero a costas del patrono. Id. En relación con este aspecto, resulta alta-mente irrazonable que se obligue a un patrono a asumir una serie de responsabilidades para mantener un proceso de querellas para sus empleados así como una política em-presarial contra el hostigamiento sexual en el empleo, para que a fin de cuentas, en toda instancia sea responsable ante cualquier reclamación al amaparo del Art. 5 de la Ley. íd.
Discutido lo anterior, es imperativo revisitar la inten-ción legislativa para aclarar la responsabilidad patronal en estas instancias. Al así hacerlo, me veo impedido de avalar la posición inflexible que adoptan los otros miembros de este Foro. Hacer lo contrario sería reconocer un estándar injusto que evidentemente está en conflicto con los propó-sitos forjados por el legislador en la Ley Núm. 17. El aus-cultar la intención legislativa aclara el intríngulis y al-cance de este estatuto. Recordemos que este andamiaje legal exige al patrono adoptar e implementar todas las me-didas afirmativas y concretas dirigidas a prevenir el hosti-gamiento sexual.
Aunque en el Informe del Senado de Puerto Rico sobre el P. del S. 1437 se reseña que la mejor forma de asegurar el compromiso de parte del patrono contra el hostiga-miento sexual es imponiendo responsabilidad absoluta, ello se debe interpretar a la luz de los pronunciamientos de su cuerpo hermano que presentó un informe de amplio *81 contenido. Debemos puntualizar que durante el trámite le-gislativo los secretarios y jefes de agencias de la Rama Eje-cutiva participan en el análisis de las medidas. Ahora bien, ello no implica que una misiva que alguno de estos funcio-narios remita al Primer Ejecutivo constituya la letra de la ley o sea parte de la intención legislativa.
Es por ello, que hoy adoptamos los factores que la Asam-blea Legislativa consideró al momento de fijar el grado de responsabilidad patronal en los casos de hostigamiento sexual. Consecuentemente, en esta opinión emitimos nues-tro criterio a la luz del historial legislativo. Es decir, que el texto del Art. 5 de la Ley Núm. 17, supra, no excluye en forma alguna las posibles defensas que están disponibles al patrono y que también pueden ser invocadas en la esfera federal.
Entendemos que es un error de metodología adjudica-tiva no consider la totalidad del historial legislativo y simple y llanamente concluir que el Art. 5 prohíbe invocar cualquier tipo de defensa afirmativa.
III
Ya expuesto nuestro criterio sobre la aplicabilidad de la responsabilidad patronal por los actos de hostigamiento sexual de los supervisores o agentes, procedemos ahora al análisis de la controversia de autos.
En este caso se estableció que la señora Ortiz González fue víctima de hostigamiento sexual por parte del señor Rivera, subgerente del restaurante Burger King. No hay lugar a dudas de que el codemandado creó mediante sus comentarios y acciones un ambiente hostil, intimidante y ofensivo para la señora Ortiz González. Ello, en clara con-travención de lo dispuesto en el Art. 3(c) de la Ley Núm. 17, supra. Por tal razón, el foro primario concluyó que el patrón de hostigamiento ocasionó que la demandante fuera humillada como mujer. Asimismo, dicho foro reconoció que *82 Burger King fue diligente al aténder la queja de la demandante y cumplió con la política pública contra el hostigamiento sexual en el empleo. Véase Caso Núm. CC-2009-0243, 1ra Pieza, Certiorari, Apéndice, págs. 235-236, 255. Empero, luego de revisar las determinaciones de hecho se-gún expuestas por el foro primario, es forzoso concluir que igualmente la demandante fue diligente al notificar a su patrono sobre la conducta de hostigamiento sexual que su-frió de parte del señor Rivera.
Coincidimos con el tribunal primario, en que el patrono cumplió con sus responsabilidades de prevenir y corregir prontamente la conducta de hostigamiento. Ello, pues Caribbean Restaurants tenía vigente una política que prohi-bía el hostigamiento sexual en el empleo, así como normas de conducta y procedimientos para dilucidar controversias de esta naturaleza. Además, la compañía tenía desplega-dos en todas sus instalaciones afiches del Departamento del Trabajo y de sus políticas antidiscrimen y contra el hostigamiento sexual. Incluso, tenía una línea especial “hotline” para atender cualquier tipo de queja. También hay constancia, que previo a comenzar su empleo la de-mandante recibió la documentación sobre las políticas y adiestramientos sobre el tema. Igualmente, en abril de 2000 la empresa conceptualizó la “Política de Caribbean Restaurants, LLC (Burger King) sobre Discrimen y Hosti-gamiento en el empleo”. En el mes de julio la demandante recibió otro adiestramiento sobre esta política.
Por otro lado, ante la petición de la señora Ortiz Gonzá-lez de desistir de la queja, la gerencia optó por cumplir con la política contra el hostigamiento y llevar a cabo una investigación. Subsiguientemente, suspendió del empleo al señor Rivera como medida preventiva. Asimismo, luego de concluir la investigación, se le requirió que presentara la renuncia al codemandado.
Estas medidas constituyeron acciones afirmativas y de-notan un genuino interés del patrono por hacer cumplir la *83 política pública contra del hostigamiento sexual. Por otro lado, la demandante no incurrió en dilaciones en informar y tomar medidas para evitar el comportamiento ofensivo, degradante e irrespetuoso de parte del señor Rivera. La prueba demuestra que la conducta constitutiva de hostiga-miento surgió entre los meses de mayo a agosto de 2000 y la empleada reportó la misma en este último mes. Enten-demos que fue un periodo razonable y que la demandante fue diligente al solicitar la protección de medidas correcti-vas de su patrono.
En atención a ello, si aplicamos la doctrina establecida por el Tribunal Supremo federal de Faragher, supra, y Ellerht, supra, arribamos al mismo resultado al que llegan los otros cuatro compañeros de esta Curia. Es decir, que Caribbean Restaurant debe responder vicariamente por el hostigamiento sexual cometido por el señor Rivera. Recordemos que la normativa federal le provee al patrono una defensa afirmativa en los casos de hostigamiento sexual cometido por supervisores, en su modalidad de ambiente hostil. El examen a realizarse para determinar si procede esta defensa consiste en determinar si el patrono evidenció mediante preponderancia de prueba dos factores que repetimos: (a) que el patrono ejerció un cuidado razonable para prevenir y corregir prontamente cualquier conducta de hostigamiento, y (b) que el empleado demandante irrazonablemente falló en aprovechar las oportunidades de medidas preventivas o correctivas provistas por el patrono para evitar los daños. Faragher v. City of Boca Raton, supra, pág. 807; Burlington Industries, Inc. v. Ellerth, supra, pág. 765.
Como se puede apreciar del expediente judicial, Caribbean Restaurants sí ejerció el debido cuidado para promo-ver la política contra el hostigamiento sexual. Además, el patrono no tomó ninguna medida adversa o acción laboral tangible contra la señora Ortiz González. Sin embargo, a la luz de los hechos probados y la totalidad de las circunstan-cias, no podemos concluir que la demandante falló en apro- *84 vechar las medidas correctivas provistas por su patrono. En consecuencia, colegimos que Caribbean Restaurants también responde solidariamente por las acciones realiza-das por su subgerente.
IV
Por los fundamentos enunciados, coincido con la revoca-ción de parte de la sentencia emitida por el Tribunal de Apelaciones que libera al patrono de responsabilidad por los actos constitutivos de hostigamiento sexual. En conse-cuencia, estoy conteste con el curso decisorio emitido para fijar responsabiliad solidaria a los demandados en confor-midad con lo antes expuesto en nuestra Sentencia.

 Precisa mencionar los términos de responsabilidad absoluta y responsabili-dad vicaria se han intercambiado y confundido.
En nuestra jurisdicción está vigente la teoría jurídica que impone responsabili-dad extracontractual absoluta al fabricante por los daños causados por productos defectuosos. Así pues, la responsabilidad absoluta es una doctrina que se refiere a responsabilidad sin culpa y sin negligencia. Es decir, no hay que probar negligencia, solamente que el producto era defectuoso y que dicho defecto fue la causa del daño. Aponte v. Sears Roebuck de P.R., Inc., 144 DPR 830 (1998).
Por otra parte, en el Art. 1802 del Código Civil, 31 LPRAsec. 5141, se establece que quien “por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado”. Como corolario de lo anterior, el Art. 1803 del Código Civil, 31 LPRA see. 5142, dispone que “[l]a obligación que impone [el Artículo 1802] es exigible, no sólo por los actos u omisiones propios, sino por los de aquellas personas de quienes se debe responder”. íd. “La responsabilidad de que trata esta sección cesará cuando las personas en ella mencionadas prueben que em-plearon toda la diligencia de un buen padre de familia para prevenir el daño”. íd.
De esa manera, la referida disposición establece el principio de responsabilidad vicaria, la cual cesará cuando las personas a quienes se responsabiliza vicariamente demuestren que emplearon toda la diligencia de un buen padre de familia para prevenir el daño. Art. 1803, supra.
En los casos de responsabilidad vicaria patronal al amparo del Art. 1803, el patrono responde por los actos de sus empleados dentro de las funciones y en cum-plimiento de las obligaciones regulares de empleo. Los únicos casos en los que un patrono se puede liberar de esta responsabilidad es si el acto del empleado es para beneficio propio y no benefician al patrono. En Hernández Vélez v. Televicentro, 168 DPR 803 (2006), un empleado cometió actos de hostigamiento sexual. Allí expresa-mos que un patrono no podía responder por los actos de un empleado que no tenían el propósito de servir y proteger los intereses del patrono, ni tampoco de adelantar los objetivos de su empresa.
Precisa mencionar que el término de “responsabilidad vicaria” es ajeno al Dere-cho civil. En Puerto Rico hemos adoptado esta terminología del Derecho angloame-ricano “vicarious liability que, a su vez surge como vertiente del “master and servant rule”. Según esta norma, el patrono está obligado a responder por el empleado sin que haya incurrido en negligencia. En el Derecho civil este concepto se trata como “la responsabilidad por el hecho ajeno”, basado en una presunción de culpa in vigi-lando o in eligendo en que incurren las personas señaladas como responsables. C. J. Irizarry Yunqué, Responsabilidad civil extracontractual: un estudio basado en las decisiones del Tribunal Supremo de Puerto Rico, 7ma ed., [ed. de autor], 2009, pág. 363. Este tipo de responsabilidad realmente se impone, no por el acto ajeno, sino por el acto propio de quien, por su negligencia permite que se cause un daño a un tercero. íd.
En relación con la responsabilidad impuesta por la Ley Núm. 17, para propósi-tos de nuestra discusión, en aquellas instancias en que señalemos que se impone responsabilidad a un patrono por el hostigamiento sexual cometido por un supervisor, aunque el primero demuestre haber sido diligente a los efectos de prevenir da-ños, hablaremos de responsabilidad vicaria impuesta de manera automática o estricta.

 La demandante trabajó en el Banco desde 1974 hasta 1978, fecha en que fue despedida por presuntamente haber abusado de una licencia por enfermedad que le había sido concedida. Esta demandó al Banco y a su supervisor Sidney Taylor porque presuntamente, a insistencias de Taylor, y por temor a perder su trabajo, accedió a tener con él relaciones sexuales. Así pues, en el tiempo que laboró en el Banco tuvo relaciones íntimas con Taylor en unas cuarenta o cincuenta ocasiones. Asimismo, aseveró que el hostigador la seguía al baño de las damas, le coqueteaba frente a otros empleados y que la obligó en varias ocasiones a sostener relaciones involun-tariamente. Igualmente, explicó que nunca notificó los hechos antes descritos porque no quería perder su trabajo.

 Para ese entonces estaba vigente el Restatement (Second) of Agency Sec. 219 (1958) que establecía que:
“(1) Amaster is subject to liability for the torts of his servants committed while acting in the scope of their employment.
(2) Amaster is not subject to liability for the torts of his servants acting outside the scope of their employment, unless:
(a) the master intended the conduct or the consequences, or
(b) the master was negligent or reckless, or
(c) the conduct violated a non-delegable duty of the master, or
(d) the servant purported to act or to speak on behalf of the principal and there was reliance upon apparent authority, or he was aided in accomplishing the tort by the existence of the agency relation”.

 Esto es contrario a lo que arguye la otra opinión de conformidad sobre que “[c]on este proceder, el Tribunal Supremo federal optó por distanciarse de las guías establecidas por la EEOC en cuanto a la responsabilidad patronal [...]”. Opinión de conformidad de la Juez Asociada Señora Rodríguez Rodríguez, pág. 27. Más bien, el Tribunal Supremo de 'Estados Unidos avaló las guías de la EEOC y opinó que estas debían ser interpretadas a la luz de los principios de agencia. Esta norma jurispru-dencial fue conforme a la intención de las guías, tanto así que, como mencionaremos más adelante, la EEOC aclaró dichas normas conforme a lo dispuesto en ese dicta-men federal y otros pronunciamientos posteriores que también discutiremos en nues-tro escrito.

 Vance v. Ball State Univ., 133 S.Ct. 2434 (2013), resuelto el 24 de junio de 2013.

 Sobre este extremo se enfatiza el deber de mitigar o evitar daños. Burlington Industries, Inc. v. Ellerth, 524 US 742, 758-759 (1998).

 Véase Enforcement Guidenee on Vicarios Employer Liability for Unlawful Harrasment by Supervisors. Disponible en: http://www.eeoc.gov/policy/docs/ harassment.html.

 Al así proceder, haciendo alusión a los mencionados casos, el Tribunal Supremo federal expresó que:
“If the supervisor’s harassment culminates in a tangible employment action, the employer is strictly liable. But if no tangible employment action is taken, the employer may escape liability by establishing, as an affirmative defense, that (1) the employer exercised reasonable care to prevent and correct any harassing behavior and (2) that the plaintiff unreasonably failed to take advantage of the preventive or corrective opportunities that the employer provided. Id., at 807, 118 S.Ct. 2275; Ellerth, supra, at 765, 118 S.Ct. 2257. Under this framework, therefore, it matters whether a harasser is a ‘supervisor’ or simply a co-worker”. Vance v. Ball State Univ., supra, pág. 2439.

 Sobre este asunto, concretamente el Tribunal expresó lo siguiente:
“Those decisions contemplate a unitary category of supervisors, i.e., those employees with the authority to make tangible employment decisions. There is no hint in either decision that the Court had in mind two categories of supervisors: first, those who have such authority and, second, those who, although lacking this power, nevertheless have the ability to direct a co-worker’s labor to some ill-defined degree. On the contrary, the Ellerth ¡Faragher framework is one under which supervisory status can usually be readily determined, generally by written documentation [...]
“[...] As Ellerth recognized, however, ‘most workplace tortfeasors are aided in accomplishing their tortious objective by the existence of the agency relation,’ and consequently ‘something more’ is required in order to warrant vicarious liability. 524 U.S., at 760,118 S.Ct. 2257. The ability to direct another employee’s tasks is simply not sufficient. Employees with such powers are certainly capable of creating intolerable work environments, see post, at 2459-2460 (discussing examples), but so are many other co-workers. Negligence provides the better framework for evaluating an employer’s liability when a harassing employee lacks the power to take tangible employment actions.
“[...] The Ellerth ¡Faragher framework draws a sharp line between co-workers and supervisors. Co-workers, the Court noted, ‘can inflict psychological injuries’ by creating a hostile work environment, but they ‘cannot dock another’s pay, nor can *66 one co-worker demote another.’ Ellerth, 524 US, at 762, 118 S.Ct. 2257. Only a supervisor has the power to cause ‘direct economic harm’ by taking a tangible employment action. Ibid. ‘Tangible employment actions fall within the special province of the supervisor. The supervisor has been empowered by the company as a distinct class of agent to make economic decisions affecting other employees under his or her control.... Tangible employment actions are the means by which the supervisor brings the official power of the enterprise to bear on subordinates.’ Ibid, (emphasis added).The strong implication of this passage is that the authority to take tangible employment actions is the defining characteristic of a supervisor, not simply a characteristic of a subset of an ill-defined class of employees who qualify as supervisors.
“[...] As noted, the Ellerth/Faragher framework sets out two circumstances in which an employer may be vicariously liable for a supervisor’s harassment. The first situation (which results in strict liability) exists when a supervisor actually takes a tangible employment action based on, for example, a subordinate’s refusal to accede to sexual demands. The second situation (which results in vicarious liability if the employer cannot make out the requisite affirmative defense) is present when no such tangible actjon is taken. Both Ellerth and Faragher fell into the second category, and in Ellerth, the Court couched the question at issue in the following terms: ‘whether an employer has vicarious liability when a supervisor creates a hostile work environment by making explicit threats to alter a subordinate’s terms or conditions of employment, based on sex, but does not fulfill the threat.’ 524 US, at 754, 118 S.Ct. 2257. This statement plainly ties the second situation to a supervisor’s authority to inflict direct economic injury. It is because a supervisor has that authority —and its potential use hangs as a threat over the victim' — - that vicarious liability (subject to the affirmative defense) is justified”. Vance v. Ball State Univ., supra, págs. 2443-2448.

 En el caso de autos, ausente en el expediente cualquier documento que acredite las responsabilidades y facultades del puesto de sub-gerente de la empresa y ante las determinaciones del Tribunal de Primera Instancia de que el señor Rivera ocupaba el puesto de gerente cuando la señora Vázquez se ausentaba, consideramos entonces que para los efectos el señor Rivera era un supervisor dentro de los están-dares legales de la jurisprudencia actual y la Ley Núm. 17.

 29 LPRA sec. 155 et seq.

 Exposición de Motivos de la Ley Núm. 17 de 22 de abril de 1988, 1988 Leyes de Puerto Rico 80.

 Es prudente señalar que en Meritor Sav. Bank, FSB v. Vinson, 477 US 57 (1986), según el propio Tribunal aclaró posteriormente en Burlington Industries, Inc. v. Ellerth, supra, no se utilizaron los términos quid pro quo y ambiente hostil para definir un estándar de responsabilidad patronal. Más bien, el Tribunal Supremo federal utilizó estos términos para distinguir las situaciones en las que las amenazas sobre acciones laborales tangibles son ejecutadas y aquellas instancias en que no. En vista de que estos términos no aparecen en el Título VII, no deberían formar parte de un estándar para adjudicar responsabilidad. Burlington Industries, Inc. v. Ellerth, supra, pág. 752. Véase, también, N.R. Mansfield y J.T.A. Gabel, An Analysis of the Burlington and Faragher Affirmative Defense: When Are Employers Liable?, 19 The Labor Lawyer 107 (2003).

 La otra opinión cita el caso del Tribunal Supremo de California, State Dept. of Health Services v. Superior Court, 31 Cal.4th 1026 (2003), en su esc. 7. Ello para decir que la defensa afirmativa más detallada allí adoptada no es incompatible con nuestro ordenamiento jurídico. Véase Opinión de conformidad de la Juez Asociada Señora Rodríguez Rodríguez, págs. 32-33.

 Citamos el referido artículo para exponer las contradicciones de la interpre-tación que avala parte de este Tribunal. No obstante, no hacemos eco de las expre-siones de dicho escrito sobre que la Ley Núm. 17 establece responsabilidad absoluta al patrono de manera diáfana.